IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JASON L. BICKING and                         )
CATHLEEN B. MAURO,                           )
     on behalf of themselves and            )
     all others similarly situated,         )
                                     )
          Plaintiffs,                            )
                                       )
     v.                                     )    Civil Action No. 3:11CV78–HEH
                                         )
MITCHELL RUBENSTEIN &                        )
ASSOCIATES, P.C.; MICHAEL R.                 )
COGAN, P.C.; MITCHELL                        )
RUBENSTEIN; and MICHAEL R.                   )
COGAN,                                       )
                                         )
          Defendants.                            )

## MEMORANDUM OPINION
### (Granting Joint Motion for Class Certification and Preliminary Approval of Class Action Settlement)

This action arises under the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. §§ 1692 *et. seq.*  It is presently before the Court on the parties' Amended Joint

Motion for Preliminary Approval of Class Action Settlement.  Together, the parties

request that this Court certify the proposed plaintiff class for settlement purposes, and

preliminarily approve their proposed Class Action Settlement Agreement and Release

("Settlement Agreement"), which they attach to their Motion as Exhibit A.  For the

reasons below, the Motion will be granted.

### I. BACKGROUND

At the center of this case are certain debt-collection letters sent by Mitchell

Rubenstein & Associates, P.C. and Michael R. Cogan, P.C. (together with their

respective "owner[s], operator[s], and resident agent[s]," Mitchell Rubenstein and

Michael R. Cogan, "Defendants"). Plaintiff Jason L. Bicking ("Bicking") alleges that on

June 8, 2010, Defendants sent him a dunning letter[1] advising that his Discover Bank

account had been referred to Defendants for collection.[2] Plaintiff Cathleen B. Mauro

received an identical letter concerning her FIA Card Services, N.A. account on

September 7, 2010.[3] Both letters advised that "[i]f the account is not in dispute, payment

is expected." (Pls.' Compl. Exs. A, B.) The letters also contained the following notice

("the Verification Notice"):

### CONSUMER NOTICE PURSUANT TO 15 U.S.C. SECTION 1692(G)[sic][4]

**Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office within thirty (30) days from receiving notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request, within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. This is an attempt to collect a debt and any information obtained will be used for that purpose. This letter is from a debt collector.**

(*Id.*)

On February 2, 2011, Bicking and Mauro (together, "Plaintiffs") filed a one-count

class action complaint alleging that the Verification Notice "failed to inform the

consumer that in order to obtain validation of the alleged debt and/or the name and

address of the original creditor[,] the request must be 'in writing,'" in violation of 15

U.S.C. §§ 1692g(a)(4)-(5) and 1692e(10)." (*Id.* at ¶ 28.) Defendants filed a Motion to

---

[1] A "dunning letter" is a letter demanding payment of a debt—*i.e.*, a collection notice.
[2] Bicking allegedly owed $6,562.42 to Discover Bank.
[3] Mauro allegedly owed $28,099.84 to FIA Card Services, N.A.
[4] The FDCPA's validation notice provisions are actually codified at Section 1692g.

Dismiss pursuant to Rule 12(b)(6), which this Court denied on May 19, 2011. On August 22, 2011, the Court granted Plaintiffs leave to file an amended complaint, after Plaintiffs learned Defendants' proper names. Plaintiffs' First Amended Complaint, filed on August 23, 2011, is identical in substance to the original Complaint.

On October 11, 2011, the parties' jointly filed the instant Motion, seeking class certification and preliminary approval of their class settlement.[5] The proposed class is defined as:

> (i) [A]ll persons to whom Defendants sent a letter in the form of <u>Exhibits A or B</u> (ii) which contains the CONSUMER NOTICE PURSUANT TO 15 U.S.C. SECTION 1692(G) with text identical to that in <u>Exhibits A or B</u> (iii) in an attempt to collect a debt incurred for personal, family, or household purposes, (iv) during the period of February 2, 2009 through June 24, 2011.

The parties stipulate that this class would consist of approximately 15,642 members. The proposed Settlement Agreement provides that Defendants will: (1) pay a total of $90,000, including $6,000[6] to each named Plaintiff and $78,000 to be divided equally among participating class members; (2) pay reasonable attorneys' fees and costs "in an amount agreed upon" by the parties or otherwise set by the Court;[7] and (3) bear the cost of providing notice to class members.

## II. CLASS CERTIFICATION

Within the framework of Rule 23, "[d]istrict courts have wide discretion in deciding whether or not to certify a class." *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6

---

[5] The present amended Motion differs from the parties' original joint motion, filed on September 13, 2011, only insofar as it clarifies the basis for the agreed settlement dollar amount.

[6] Specifically, Defendants have agreed to pay each named Plaintiff $1,000 for their individual claims for statutory damages pursuant to 15 U.S.C. § 1692k(a)(2), plus $5,000 as compensation for their service to the class.

[7] The parties correctly point out that 15 U.S.C. § 1692k(a)(3) awards costs and attorneys' fees as a matter of right to a plaintiff who prevails in an action arising under the FDCPA.

F.3d 177, 185 (4th Cir. 1992). To grant certification, the Court must find that the prerequisites of Rule 23(a) are met, and that the case falls within at least one of the categories enumerated in Rule 23(b).[8] Because the instant case satisfies both criteria, class certification is proper.

Rule 23(a) provides that "[o]ne or more members of a class may sue ... as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims ... of the representative parties are typical of the claims ... of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The parties contend that the putative class complies with these qualifications, and the Court agrees.

First, the approximately 15,642 recipients of the debt-collection letter satisfy the numerosity requirement. *Cf. Gunnells v. Healthplan Svcs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (finding that a class of 1400 members "easily satisfied Rule 23(a)(1)'s numerosity requirement"); *Cent. Wesleyan,* 6 F.3d at 183 ("480 potential class members would easily satisfy the numerosity requirement."). As the Fourth Circuit has explained, "No specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (internal quotations and citation omitted). Rather, "an application of the rule is to be considered in light of the particular circumstances of the case." *Id.* Here, a class exceeding 15,000 members renders joinder wholly impracticable.

---

[8] The same standards apply where, as here, parties seek certification for settlement purposes only. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Further, this case involves common questions of fact and law. "A common question is one that can be resolved for each class member in a single hearing.... A question is not common, by contrast, if its resolution "turns on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). Here, by definition, each putative class member received a dunning letter containing the same Verification Notice. *Cf. Talbott v. GC Svcs. Ltd. P'ship*, 191 F.R.D. 99, 103 (W.D. Va. 2000) ("Mailing a standardized collection letter satisfies commonality and has been the basis for certification in similar cases."). The sole and dispositive legal question is whether that Verification Notice violates the FDCPA.

The FDCPA is a strict liability statute—it focuses on a debt collector's misconduct, and not the unique extent of each debtor's harm. *See United States v. Nat'l Fin. Servs.*, 98 F.3d 131, 139 (4th Cir. 1996). Therefore, Defendants' conduct towards each class member was equally improper—or proper. *Cf. Morgan v. Credit Adjustment Bd.*, 999 F. Supp. 803, 805 (E.D. Va. 1998) (holding that FDCPA liability does not require showing that consumer read or received the dunning letter). That is, if the Verification Notice was unlawful as to one, then it was unlawful as to all. Thus, this case presents a "question[] of law applicable in the same manner to each member of these class." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

By the same reasoning, Plaintiffs "possess the same interest and suffer[ed] the same injury as the [potential] class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982). The Fourth Circuit has explained that an assessment of typicality

5

requires "a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). Here, since they stem from the same operative facts and give rise to the same entitlement to relief, the Plaintiffs' and class members' claims are sufficiently "interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Id.* at 157 n.13. Accordingly, the Court is satisfied as to typicality.

Finally, given the nexus and lack of potential conflict between their claims and those of the putative class, Plaintiffs are adequate representatives. *See Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001) ("[T]he final three requirements of Rule 23(a) tend to merge, with commonality and typicality serving as guideposts for determining ... whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.") (internal citations and quotations omitted).[9]

Having found that the putative class comports with the demands of Rule 23(a), the Court turns to Rule 23(b). The parties assert, and this Court agrees, that this matter satisfies the predominance and superiority criteria of Rule 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. Superiority "requires that a class action be superior to other methods for the fair and efficient adjudication of the

---

[9] Although unfit counsel may render a named plaintiff's representation inadequate, the Court finds no reason here to deem class counsel unqualified to prosecute this case. Indeed, a number of sister courts have found Mr. Bragg and Mr. Pittman to be competent in class litigation. *See, e.g.*, *Talbott v. GC Svcs., Ltd. P'ship.*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (discussing Mr. Pittman and Mr. Bragg); *Jones v. Vest*, No. 3:00cv287, 2000 U.S. Dist. LEXIS 19026, at *12 (E.D. Va. Dec. 27, 2000).

controversy." *Lienhart*, 255 F.3d at 147.  As described by the Supreme Court, Rule 23(b)(3) allows for class action treatment that "is not clearly called for," but "may nevertheless be convenient and desirable." *Amchem Prods., Inc.*, 521 U.S. at 615.  This is such a case.

In this matter, all of the proposed class members' claims arise from Defendants' act of mailing the dunning letter at issue.  And as already established, their legal theories are identical: Each class member's potential claim turns on the single question of whether Defendants' Verification Notice violated the FDCPA.  That shared issue clearly predominates over potential peripheral matters, making collective resolution sensible in this case.

Moreover, class litigation provides a superior means of adjudicating the claims presented here, as the minimal recovery available to most litigants under the FDCPA gives little incentive for class members to pursue their claims individually.  *See Amchem Prods., Inc.*, 521 U.S. at 617 (observing that Rule 23(b) allows "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all") (internal quotations and citation omitted).  As the Supreme Court noted:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Id.* (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).  Applying that principle to the present case, the Court concludes that a class action is an efficient

and effective means of resolving the some fifteen thousand potential class members'

claims.  The parties' Motion will be granted as to class certification.

### III. PRELIMINARY APPROVAL OF CLASS SETTLEMENT

A court may approve a binding class-wide settlement "only ... on finding that it is

fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Prior to granting final approval,

the court must direct reasonable notice to all potentially affected class members, allow

time for objection, and provide a "fairness hearing."  These safeguards ensure that "a

proposed class has sufficient unity so that absent members can fairly be bound by

decisions of class representatives."  *Amchem Prods., Inc.*, 521 U.S. at 621; *see also In re*

*Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) ("The primary concern addressed

by Rule 23(e) is the protection of class members who rights may not have been given

adequate consideration during the settlement negotiations.").

A class settlement is *fair* if it "was reached as a result of good faith bargaining at

arm's length, without collusion."  *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.  In making

this determination, a court should consider "(1) the posture of the case at the time

settlement was proposed, (2) the extent of discovery that had been conducted, (3) the

circumstances surrounding the negotiations, and (4) the experience of counsel in the area

of ... class action litigation."  *Id.*   Whether a settlement is *adequate* depends upon "(1)

the relative strength of the plaintiffs' case on the merits, (2) the existence of any

difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case

goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the

solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

Upon review of the case before it, the Court is preliminarily satisfied as to the fairness of the parties' proposed settlement. The named parties in this case reached their Settlement Agreement under the supervision and direction of Magistrate Judge M. Hannah Lauck, and only after this Court dismissed Defendants' Motion to Dismiss. Further, Defendants appear to have complied with Plaintiffs' discovery requests to date. Defendants continue to contest their liability, but have agreed to a settlement to avoid the cost and uncertainty of litigation. Finally, both of Plaintiffs' attorneys are competent and experienced in consumer class litigation. These considerations indicate that the proposed Settlement Agreement is the product of good faith, arms-length bargaining.

At this stage, the Court also finds that the terms of the Settlement Agreement are an adequate resolution of the class members' claims. As this Court explained in its Memorandum Opinion of May 5, 2011, Plaintiffs have plausibly alleged that Defendants violated the FDCPA by sending dunning letters containing the Verification Notice. Still, their potential recovery might not justify the considerable expense and duration of trial. Further, the parties have indicated that the cost of proceeding with trial could render Defendants insolvent, and thus impede Plaintiffs' ability to recover a litigated judgment.

Critically, a settlement may not be adequate if it is heavily opposed. In this case, class members who would be bound by the settlement have not yet been invited to voice their objections. Therefore, the Court withholds final approval of the Settlement Agreement, as it must, until class members have been given proper notice and an

opportunity to object, and until a fairness hearing has been conducted. Pending further consideration, the Court will preliminarily approve the parties' Settlement Agreement.

## IV.  CONCLUSION

For the foregoing reasons, the parties' Amended Joint Motion for Preliminary Approval of Class Action Settlement will be granted. The Court will certify for settlement purposes only the plaintiff class as defined in the Motion. Additionally, the Court will preliminarily approve the parties' proposed Settlement Agreement, pending further consideration and a final hearing on the matter.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Date: Nov. 3, 2011
Richmond, VA